**Will Edward BRANTLEY, Appellant,**

v.

**CITY OF DALLAS, Appellee.**

**No. 8736.**

Court of Civil Appeals of Texas,
Amarillo.

Dec. 31, 1976.

Rehearing Denied Jan. 24, 1977.

Smith, Rachal, Schutze, Sanderson & Boudreaux, Joe N. Boudreaux, Dallas, for appellant.

Strasburger, Price, Kelton, Martin & Unis, Rowland B. Foster, Dallas, for appellee.

ROBINSON, Justice.

Plaintiff Will E. Brantley filed suit against the City of Dallas alleging personal injuries as a result of negligence on the part of employees of the Dallas Fire Department's Emergency Ambulance Service in failing to transport him to a hospital. The trial court denied plaintiff's motion for partial summary judgment and granted the defendant City's motion for summary judgment based on governmental immunity. Plaintiff appeals, contending that the operation of an emergency ambulance service is a proprietary rather than a governmental function, and in the alternative, that governmental immunity has been waived by the Texas Tort Claims Act, Vernon's Ann. Civ.St. art. 6252–19. Affirmed.

The emergency ambulance service in question is operated by the City of Dallas pursuant to city ordinances which make it unlawful for anyone except the Dallas Fire Department or the U.S. Government to operate an emergency ambulance service

within the city limits except in certain specified situations. Several private ambulance companies provide non-emergency service in the city. Emergency service is provided for patients in circumstances which call for immediate action and in which the element of time in transporting the sick, wounded or injured for medical treatment is essential to the health or life of the person.

■ We do not find that the question of whether an emergency ambulance service operated by a city is a governmental or proprietary function has been decided by the courts of this state. However, our courts have held that the operation of a city hospital is a governmental function. In *City of Dallas v. Smith,* 130 Tex. 225, 107 S.W.2d 872 (Tex.Com.App.1937, opinion adopted), the court held that the establishment and maintenance of a hospital is a governmental function and that a city is not liable for injuries caused by the negligence of its employees in the operation of the city's hospital. The court cited Dillon's Municipal Corporations (5th Ed.) Vol. 4, p. 2986, § 1661 as follows:

> Dillon's statement of the general rule is: "The power or even duty on the part of a municipal corporation to make provision for the public health and for the care of the sick and destitute, appertains to it in its governmental or public, and not its corporate, or as it is sometimes called, private capacity." Applying the general rule to the particular question here presented, he says: "And therefore where a city, under its charter, and the general laws of the state enacted to prevent the spread of contagious diseases, establishes a hospital it is not responsible to persons injured by reason of the misconduct of its agents and employees therein."

The *Tennessee Supreme Court in City of Memphis v. Bettis,* 512 S.W.2d 270 (Tenn. 1974), held that the operation of an emergency ambulance was a governmental and not a proprietary function. The Tennessee court relied on an earlier case, dealing with a public hospital wherein it had quoted 6 McQuillin Municipal Corporations § 2669, which states:

> The duty of a municipal corporation to conserve the public health is governmental, and it is not liable for injuries inflicted while performing such duty. The decisions are practically unanimous in holding that a municipality is not liable for the torts of its board of health or other health officers on *the theory that the duty in regard to preventing sickness or caring for sick people is strictly a governmental or public function.* [Emphasis supplied.]

The courts of other states have held that the operation of an ambulance by a city hospital is not a proprietary function. *City of Newark v. United States,* 149 F.Supp. 917 (D.N.J.1957); *Watson v. City of Atlanta,* 136 Ga. 370, 71 S.E. 664 (1911).

In the Texas case of *Ayala v. City of Corpus Christi,* 507 S.W.2d 324 (Tex.Civ. App.—Corpus Christi 1974, no writ), wherein a private ambulance service sought to enjoin the city from operating an emergency ambulance service, the court stated,

> The institution of an emergency ambulance service is, we believe, a service kindred to the police or fire service. This type of service is incident to the police power of the state: i. e. to protect the health, safety, and general welfare of its citizens. See Attorney General's opinions # M–231 (1968); # M–385 (1969); # C–772 (1966); # M–806 (1971).

We conclude that the operation of an emergency ambulance service by a city is a governmental function and that the City of Dallas is not liable for the negligence of its employees in performing that function unless its governmental immunity has been waived by the Texas Tort Claims Act, art. 6252–19, V.A.C.S.

Plaintiff contends that his injuries arose from negligence of the defendant City's employees arising either from the use and operation of a motor vehicle or from the use of tangible personal property for which governmental immunity has been expressly waived and abolished by art. 6252–19, V.A.

C.S. (Supp.1976). The relevant portion of that statute is as follows:

### Liability of governmental units

Sec. 3. Each unit of government in the state shall be liable for money damages for property damage or personal injuries or death when proximately caused by the negligence or wrongful act or omission of any officer or employee acting within the scope of his employment or office arising from the operation or use of a motor-driven vehicle and motor-driven equipment, other than motor-driven equipment used in connection with the operation of floodgates or water release equipment by river authorities created under the laws of this state, under circumstances where such officer or employee would be personally liable to the claimant in accordance with the law of this state, or death or personal injuries so caused from some condition or some use of tangible property, real or personal, under circumstances where such unit of government, if a private person, would be liable to the claimant in accordance with the law of this state.

Plaintiff alleges that he became ill from a perforated ulcer; that a request was made to defendant, for an ambulance to transport him to the hospital for this emergency; that defendant's employees responded to the call, but after examining him, refused to take him to the hospital in defendant's ambulance; and that he suffered personal injuries as a result.

The examination by the emergency technicians consisted of taking plaintiff's blood pressure, checking his pulse and respiration rate, and palpating his abdomen. The equipment used was a sphygmomanometer and a stethoscope which were used to determine blood pressure. Neither is alleged to have been defective or improperly used. The emergency technicians concluded that emergency transportation was not required and declined to take plaintiff to the hospital.

In contending that he has alleged a cause of action within the waiver of the Texas Tort Claims Act, plaintiff relies on *Overton Memorial Hospital v. McGuire*, 518 S.W.2d 528 (Tex.1975) in which it was alleged that injuries were caused by negligently providing a bed without bed rails; on *Mokry v. University of Texas Health Science Center*, 529 S.W.2d 802 (Tex.Civ.App.—Dallas 1975, no writ), in which injuries were alleged to have resulted from the loss of an eyeball caused by negligent use of a container and negligent failure to have a strainer covering a drain; and on *Lowe v. Texas Tech University*, 540 S.W.2d 297 (Tex.1976) in which it was alleged that injuries resulted from negligently furnishing defective equipment and in failing to furnish proper protective equipment for a football player's injured knee.

■ In each of these cases, the allegations were held sufficient to state a cause of action within the waiver of the Tort Claims Act. However, the allegations in those cases are quite different from those in the case before us. In *Mokry*, *McGuire* and *Lowe*, the injuries are alleged to have proximately resulted from the negligent use of property in some respect deficient or inappropriate for the purpose for which it was used—in *McGuire*, the hospital bed without rails; in *Mokry*, the laboratory sink without a strainer; and in *Lowe*, the football uniform without tape or knee brace. There is no such allegation in the case before us. On the contrary, plaintiff's allegations and summary judgment evidence show a refusal to render service as a result of a judgment or diagnosis made by the emergency technicians. There is no suggestion that an erroneous judgment, if it was erroneous, was made because of negligence in the use of personal property or because of any defect or deficiency in the equipment used.

Further, the omission complained of did not arise from the operation or use of a motor vehicle. The act does not define the words "operation" and "use," thus the words must be taken in their common and ordinary meaning. *Jackson v. City of Corpus Christi*, 484 S.W.2d 806 (Tex.Civ.App.—Corpus Christi 1972, writ ref'd n. r. e.).

■ Taking the words "use" and "operation" in their common and ordinary mean-

ing, an allegation that injuries resulted because a technician refused to transport plaintiff in an ambulance is not equivalent to an allegation that plaintiff's injuries were proximately caused by negligence arising from the use or operation of a motor vehicle.

We conclude that governmental immunity from liability for the alleged negligence of defendant's employees on the occurrence in question has not been waived or abolished by the Texas Tort Claims Act.

By his final point of error, plaintiff urges the court, in the interest of justice, to abrogate and abolish the doctrine of governmental immunity under the circumstances of this case. In *Lowe v. Texas Tech University, supra,* our Supreme Court stated that it adheres to its decisions in the past that the waiver of governmental immunity is a matter to be addressed to the Legislature. It is thus clearly not a matter to be undertaken by a court of civil appeals.

We overrule each of appellant-plaintiff's points of error. The judgment of the trial court is affirmed.